Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000287
31-OCT-2016
10:11 AM

NO. CAAP-12-0000287

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
WALTER GUITY, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 11-10288 and FC-CR. NO. 10-1-0022)

MEMORANDUM OPINION
(By: Nakamura, Chief Judge, and Foley and Leonard, JJ.)

Plaintiff-Appellee State of Hawai'i (State) charged Defendant-Appellant Walter Guity (Guity) with multiple offenses in two cases. Pursuant to a plea agreement encompassing both cases, Guity pleaded guilty to (1) the amended charge of third-degree sexual assault of his wife and (2) second-degree sexual assault of a different person.

Under the law applicable to the charges in Guity's cases, the offense of third-degree sexual assault to which Guity pleaded guilty could not be committed by a defendant against his or her spouse. Guity pleaded guilty to third-degree sexual assault, in violation of Hawaii Revised Statutes (HRS) § 707-732(1)(f) (2014), which defined the offense as being committed if "[t]he person knowingly, by strong compulsion, has sexual contact with another person or causes another person to have sexual contact with the actor." At the time applicable to Guity's

cases, the term "sexual contact" was defined by statute to mean, in relevant part: "any touching, other than acts of 'sexual penetration', of the sexual or other intimate parts of a <u>person not married to the actor</u>, or of the sexual or other intimate parts of the actor by the person . . . ." HRS § 707-700 (2014) (emphasis added). Accordingly, given the Legislature's definition of the offense, Guity pleaded guilty to an offense -- third-degree sexual assault against his wife -- that was legally impossible for Guity to commit.[1]

The parties and the Circuit Court[2] were all aware that Guity could not legally commit the third-degree sexual assault to which he agreed to plead guilty pursuant to the plea agreement. Nevertheless, as requested by the parties, the Circuit Court accepted the parties' plea agreement and Guity's guilty pleas. Pursuant to the plea agreement, Guity pleaded guilty to one count of third-degree sexual assault and one count of second-degree sexual assault; the State dismissed the remaining charges against Guity; and the Circuit Court agreed to be bound by the parties' agreement on sentencing, which called for Guity to be sentenced to concurrent five-year terms of probation, subject to concurrent

[1] We note that the Hawai'i Legislature subsequently amended the definition of "sexual contact" during the 2016 legislative session so that it no longer excludes sexual contact between persons married to each other. 2016 Haw. Sess. Laws Act 231 (Act 231), § 32 at 753. As amended by Act 231, the term "sexual contact" is now defined in HRS § 707-700 to mean, in relevant part: "any touching, other than acts of 'sexual penetration', of the sexual or other intimate parts of another, or of the sexual or other intimate parts of the actor by another . . . ." <u>Id.</u> As a result of the amendments made by Act 231 to the definition of "sexual contact," a person who knowingly, by strong compulsion, has sexual contact with his or her spouse or causes his or her spouse to have sexual contact with the actor would now be guilty of third-degree sexual assault. However, the effective date of the amendments to the definition of "sexual contact" made by Act 231 is July 1, 2016, and such amendments do not "affect rights and duties that matured, penalties that were incurred, and proceedings that were begun before [Act 231's] effective date[.]" <u>Id.</u> at §§ 70, 72 at 755-76. The 2016 amendments to the definition of "sexual contact" do not apply to Guity's alleged offenses in his cases, which predated the effective date of the 2016 amendments.

[2] Charges were filed against Guity in the Family Court of the First Circuit (Family Court) and the Circuit Court of the First Circuit (Circuit Court). The Honorable Karen S.S. Ahn presided in both cases. For simplicity, we will refer in this Memorandum Opinion to both the Family Court and the Circuit Court as the "Circuit Court."

2

jail terms of twelve months for the third-degree sexual assault and eighteen months for the second-degree sexual assault, with credit for time served.

Guity subsequently sought to withdraw his guilty pleas, arguing, among other things, that: (1) he could not be charged with third-degree sexual assault of his wife under the Hawai'i statutes; and (2) his guilty pleas were invalid due to the ineffective assistance of his counsel. Guity represented himself, with the assistance of stand-by counsel, during the hearing on his oral motion withdraw his guilty pleas. The Circuit Court denied the motion, and it later sentenced Guity pursuant to the plea agreement.

On appeal, Guity contends: (1) the Circuit Court erred in accepting Guity's guilty plea to third-degree sexual assault of his wife, an offense that he was statutorily precluded from committing; (2) he was entitled to withdraw his guilty pleas on the ground that his counsel provided ineffective assistance in advising him regarding the plea agreement; and (3) the Circuit Court failed to obtain a valid waiver of Guity's right to counsel prior to the hearing on his motion to withdraw his guilty pleas, thereby invalidating the Circuit Court's ruling on the motion.

We hold that the Circuit Court erred in accepting Guity's guilty plea to, and entering judgment on, the offense of third-degree sexual assault of his wife, a crime that was legally impossible for Guity to commit. We further hold that the Circuit Court failed to obtain a valid waiver of Guity's right to counsel prior to the hearing on Guity's motion to withdraw his guilty pleas. We vacate the judgments entered by the Circuit Court, and we remand the cases for further proceedings consistent with this Memorandum Opinion.

BACKGROUND

I.

On May 25, 2010, the State charged Guity by indictment in FC-CR No. 10-1-0022 (the Family Court Case) with abuse of a family or household member (Count 1); second-degree terroristic

3

threatening (Count 2); kidnapping (Count 3); attempted first-degree sexual assault (Counts 4 and 5); and interference with reporting an emergency or crime (Count 6). The indictment in the Family Court Case alleged that the victim of and complaining witness for the charged offenses was Guity's wife, NG. Guity retained Reginald Minn, Esq. (Minn) to represent him in the Family Court Case.

While trial was pending in the Family Court Case, the State on March 2, 2011, charged Guity by indictment in CR. NO. 11-1-0288 (the Circuit Court Case) with second-degree sexual assault (Counts 1 through 3) and fourth-degree sexual assault (Counts 4 through 6). The indictment in the Circuit Court Case alleged that the victim of and complaining witness for the charged offenses was CA, a different person than the alleged victim in the Family Court Case. Deputy Public Defender Craig Nagamine (Nagamine) was appointed to represent Guity in the Circuit Court Case.

II.

By letter dated April 12, 2011, Minn made a plea offer to resolve both cases, which provided that:

> Mr. Guity would plead guilty to one count of Sexual Assault in the Second Degree in [the Circuit Court Case] and one count of Sexual Assault in the Third Degree as to [the Family Court Case]. All other counts would be dismissed. Further, pursuant to Rule 11, the parties and the court would agree that Mr. Guity would be sentenced to concurrent five-year terms of probation with a special condition of incarceration not to exceed 18 months. All standard terms of conditions relating to sex assault cases would apply.

The State responded by making a counteroffer that included more details but incorporated the essential terms contained in Guity's plea offer. With respect to the proposed guilty plea to third-degree sexual assault in the Family Court Case, the State's counteroffer provided that Guity shall plead guilty in Count 4 to the amended/lesser charge of third-degree sexual assault, in violation of HRS § 707-732(1)(f), and that Guity "shall waive any substantive or procedural defects to the amendment of the charge." Guity accepted the State's counteroffer.

4

At the change of plea hearing held on May 18, 2011, Minn was substituted as counsel for Nagamine in the Circuit Court Case and accordingly represented Guity in both cases. Pursuant to the parties' plea agreement, Guity signed "Guilty Plea" forms in both cases. In the Family Court Case, Guity had originally been charged in Count 4 with attempted first-degree sexual assault for "attempting to insert his penis into [his wife's] genital opening[.]" Pursuant to the plea agreement, Guity agreed to plead guilty to the amended/lesser offense in Count 4 of third-degree sexual assault. In his Guilty Plea form, Guity stated that the factual basis for this guilty plea was: "On May 18, 2010, at our home in Mililani, I used physical force to have sexual contact with my wife's genital area." In the Circuit Court Case, Guity agreed to plead guilty to Count 1, which charged him with second-degree sexual assault for knowingly subjecting CA to an act of sexual penetration by compulsion.[3/]

At the change of plea hearing, the Circuit Court discussed with Guity, and Guity acknowledged, that he sought to plead guilty to third-degree sexual assault against his wife, for conduct which the Legislature at that time had not made a crime:

> THE COURT: . . . . In [the Family Court Case] your plea of guilty in count 4 to sexual assault in the third degree carries five years in jail and $10,000 in fines.
>
> Now, sexual assault in the third degree is actually defined by the Legislature to exclude sexual contact, under this statute, with someone you're married to. But in accordance with the plea bargain you have agreed to plead to this offense. Is that -- you understand all of that?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Okay. Are you giving up your right to be excluded from that statute by legislative language?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Okay. Do you have any questions about that?
>
> THE DEFENDANT: No, Your Honor.

---

[3/] In his Guilty Plea form in the Circuit Court Case, Guity stated the factual basis for his plea was: "On December 7, 2010, I had sexual intercourse with [CA] without her consent at her home in Ewa Beach."

In pleading guilty to the amended third-degree sexual assault charge, Guity acknowledged that the victim of that charge was his wife:

> THE COURT: All right. Then in [the Family Court Case], in count 4, to sexual assault in the third degree, how do you wish to plead? Not guilty, guilty or no contest?
>
> THE DEFENDANT: Plead guilty, Your Honor.
>
> THE COURT: I'm sorry?
>
> THE DEFENDANT: Plead guilty, Your Honor.
>
> THE COURT: Okay. And on the second page [of the Guilty Plea form] it says May 18, 2010, at home in Mililani, you used physical force to have sexual contact with your wife's genital area. Is that true?
>
> THE DEFENDANT: Yes, Your Honor.

After completing its colloquy under Hawaiʻi Rules of Penal Procedure (HRPP) Rule 11 for Guity's guilty pleas to third-degree sexual assault in the Family Court Case and second-degree sexual assault in the Circuit Court Case, the Circuit Court found that: (1) Guity understood "the nature of the offenses, and the consequences of pleading, and his rights"; (2) he "voluntarily, knowingly and intelligently decided to give up his rights and to enter his pleas of guilty"; and (3) "[t]here is a factual basis for those pleas." Accordingly, the Circuit Court accepted Guity's guilty pleas and set sentencing for July 25, 2011. At Guity's request, sentencing was continued to September 6, 2011.

III.

Prior to sentencing, Guity sent a letter to the Circuit Court dated August 6, 2011, in which he stated that he wanted to "withdraw [his] plea and get [his] due process under the law." Guity also stated that he no longer wanted to be represented by Minn. Guity asserted that he had lost confidence in Minn, that Minn had given Guity misleading advice, and that Minn had pressured Guity to accept the plea agreement. On August 23, 2011, Minn filed a motion to withdraw as Guity's retained counsel in both cases, stating that he received correspondence from Guity that required his withdrawal. Minn also represented that Guity

6

had been in custody since about February 2011 and was without financial means to retain counsel.

On September 6, 2011, the Circuit Court held a hearing on Minn's motion to withdraw as counsel. The Circuit Court granted the motion and referred Guity to the Public Defender's Office for representation.

IV.

By letter dated December 10, 2011, Guity notified the Circuit Court that he wanted to represent himself, claiming that the Public Defender's Office, due to its heavy caseload, had failed "to do anything with my case." Guity also indicated that he wanted to withdraw his guilty pleas and proceed to trial.

The Circuit Court discussed Guity's requests at a hearing held on December 19, 2011. Deputy Public Defender Nagamine appeared at the hearing on behalf of Guity, who was also present. Guity informed the Circuit Court that he wanted to represent himself and withdraw his guilty pleas so that his cases could go to trial "as soon as possible." The Circuit Court stated that it wanted a written motion before deciding the representation issue. Nagamine promised to discuss the issue with Guity. The Circuit Court advised Guity, "I would never represent myself in a felony case[,]" and it discussed certain disadvantages he would face if he represented himself.

On January 3, 2012, Nagamine filed a motion to withdraw as counsel, in which he requested that new counsel be appointed. Nagamine represented that Guity was dissatisfied with Nagamine and the Public Defender's Office and wanted a new lawyer.

On January 17, 2012, the Circuit Court held a hearing on the motion to withdraw as counsel. Guity explained that he was unhappy with the Public Defender's Office because after Minn was allowed to withdraw, Guity did not hear from the Public Defender's Officer for three months. Guity indicated that because he was in custody, time was his main concern and that he wanted to get his cases to court for trial. Guity stated that he wanted to "go pro se," but also asked if the Circuit Court could appoint him counsel other than Nagamine.

7

Nagamine stated that he informed Guity that his heavy caseload would necessitate delays and that he could not realistically take Guity's cases to trial for six months. Nagamine indicated that this upset Guity, who asked Nagamine to withdraw from the case.

The Circuit Court reminded Nagamine that Guity had already pleaded guilty, so that the first step would be to determine whether Guity would be permitted to withdraw his guilty pleas. Nagamine apologized and said he was assuming that the cases would be reset for trial. The Circuit Court informed Guity that it could hold a hearing in three days (that Friday) on a motion by Guity to withdraw his guilty pleas, and it informed Guity that Nagamine could represent Guity or act as stand-by counsel if Guity wanted to represent himself.

Guity informed the Circuit Court that he wanted the hearing on his request to withdraw his guilty pleas held that Friday. The Circuit Court then asked Guity what he wanted to do with respect to representation by counsel, and the following discussion ensued:

> THE COURT: Do you want to represent yourself or you want Mr. Nagamine to represent you? Or do you want Mr. Nagamine simply to be here to help you?
>
> THE DEFENDANT: I'll go pro se and Mr. [Nagamine][4] can be stand-by counsel, Your Honor.
>
> THE COURT: Okay. You understand that you have a right to a lawyer? And that's always the advisable thing. You understand that? And if you can't afford one, the court's going to pay for it. You understand that, Mr. Guity?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Okay. You're making -- I take it that you're making a voluntary, knowing, and intelligent decision that you do not want Mr. Nagamine to actually handle this, or you do not want to exercise your right to a lawyer and you want to do it yourself.
>
> THE DEFENDANT: I need a lawyer, Your Honor.

---

[4] The hearing transcript shows that Guity mistakenly referred to Deputy Public Defender Nagamine as "Nakayami."

THE COURT: Look, I'm not going to play games, Mr. Guity.

THE DEFENDANT: I know. I -- Your Honor --

THE COURT: If your problem is time, I'm denying your motion. Let's proceed. We're going Friday.

(Formatting altered.)

V.

Guity did not file a written motion to withdraw his guilty pleas. On January 18, 2012, the State filed a memorandum in opposition to Guity's oral motion to withdraw his guilty pleas. On January 20, 2012, the Circuit Court held a hearing on Guity's oral motion to withdraw his guilty pleas. At the outset of the hearing, Guity informed the Circuit Court that he was representing himself and that Nagamine was acting as stand-by counsel.

At the hearing, Guity stated the grounds for his motion to withdraw his guilty pleas, arguing, among other things, that: (1) he could not be charged with third-degree sexual assault of his wife under the Hawai'i statutes; and (2) Minn provided ineffective assistance because Guity alleged that Minn had: (a) failed to explain the laws regarding his cases; (b) failed to explain the law of consent as it applied to his second-degree sexual assault charge against CA; (c) failed to adequately explain his plea offer and the State's counteroffer; and (d) threatened and coerced Guity into accepting the plea bargain.

The State moved the transcript of the change of plea hearing and the letters reflecting Guity's plea offer and the State's counteroffer into evidence. The State also called Minn to testify. Minn's testimony contradicted Guity's allegations that Minn failed to adequately explain the laws applicable to Guity's cases or the content of the plea offer and counteroffer. Minn also testified that he did not force Guity to plead guilty and that he believed Guity was thinking clearly and knew what he was doing when he entered his guilty pleas. With respect to Guity's plea of guilty to third-degree sexual assault of his

9

wife, Minn testified that he explained to Guity that under the law, Guity's wife could not be a victim of that charge. Minn testified that he told Guity that "it was up to [Guity] whether he wanted to waive [this defect]," and that Guity responded that he would waive the defect and that he was willing to "do the deal[.]" Minn stated that he and the Deputy Prosecuting Attorney (DPA) informed the Circuit Court of this issue, and the Circuit Court indicated it would have to colloquy Guity regarding the issue.[5/]

The Circuit Court denied Guity's motion to withdraw his guilty pleas and filed its written "Order Denying Oral Motion to Withdraw Guilty Plea." The written order provided in relevant part:

> Defendant elected voluntarily, knowingly, and intelligently to represent himself for this proceeding, with Mr. Nagamine acting as stand-by counsel. The Court took judicial notice of the files and records under [the Circuit Court Case] and [the Family Court Case], and received without objection State's Exhibit 1, a transcript of change-of-plea proceedings before this Court in both cases conducted on May 18, 2011.

> Further, the Court heard testimony by Reginald Minn, Esq., Defendant's prior counsel. Finally, the Court incorporated all of Defendant's representations during this proceeding into and as Defendant's testimony for this hearing.

> Based upon the credible evidence, and all reasonable inferences to be drawn therefrom, the Court finds that no fair and just reason has been shown to permit Defendant to withdraw his guilty pleas in the two cases. The Court confirms that Defendant voluntarily, intelligently, and knowingly entered his pleas of guilty on May 18, 2011. The Court also finds that Defendant waived his attorney-client

_____

[5/] The record indicates that the lack of representation by counsel created difficulties for Guity at the hearing. For example, Guity did not file a written motion to withdraw his guilty pleas, and he therefore had to explain his grounds for the motion at the hearing. After Minn testified on direct examination by the State, Guity initially only asked Minn one question on cross-examination, and even after the Circuit Court reopened Minn's examination with its own questions, Guity's further cross-examination was short. When the Circuit Court asked Guity if he had any other evidence to present, Guity responded, "Your Honor, I wasn't aware that I was going to introduce evidence. I would have brought my whole evidence to shed more light on my cases, Your Honor." When the Circuit Court asked Guity what evidence he had in mind, Guity failed to describe the evidence with clarity or explain how the evidence was relevant to his motion.

privilege as to all testimony proffered by Mr. Minn, except for one answer to a question posed by [the DPA], which answer the Court struck from the record and completely disregarded.

VI.

In accordance with the plea agreement, Guity was sentenced to concurrent terms of five years of probation, subject to the condition that he serve concurrent terms of twelve months of imprisonment on his conviction for third-degree sexual assault of his wife and eighteen months of imprisonment on his conviction for second-degree sexual assault of CA, with credit for time served.[6/] The Circuit Court entered its Judgment in the Circuit Court Case on March 5, 2012, and its Amended Judgment in the Family Court Case on March 8, 2012, and this appeal followed.

DISCUSSION

I.

We first address Guity's argument that the Circuit Court erred in accepting Guity's guilty plea to the amended charge of third-degree sexual assault, in violation of HRS § 707-732(1)(f) (2014), of his wife. Guity argues that the Circuit Court's acceptance of his guilty plea to this offense constitutes plain error because the offense, as defined by the statues applicable to his Family Court Case, cannot be committed against a spouse. The State does not dispute that under the law applicable to Guity's Family Court Case, Guity was statutorily precluded from committing third-degree sexual assault in violation of HRS § 707-732(1)(f) against his wife. However, the State argues that Guity waived the right to challenge his guilty plea based on this substantive defect because he knowingly and voluntarily waived the defect as part of his plea agreement.

As explained below, we hold that the Circuit Court erred in accepting and entering judgment on Guity's plea of guilty to a crime that was legally impossible for him to commit.

---

[6/] It appears that by the time briefing in this appeal was completed, Guity had completed serving his concurrent terms of imprisonment on both convictions.

We further hold that this substantive defect in Guity's plea of guilty to third-degree sexual assault of his wife could not be waived through agreement by the parties. We therefore vacate Guity's conviction for third-degree sexual assault.

A.

Count 4 of the indictment in the Family Court Case originally charged Guity with attempted first-degree sexual assault of his wife by attempting to subject her to an act of sexual penetration, to wit, attempting to insert his penis into her genital opening, by strong compulsion, in violation of HRS §§ 705-500 and 707-730(1)(a) (2014). The statutory definition of "sexual penetration," which has remained unchanged from the time applicable to Guity's Family Court Case, does not exclude acts committed by a defendant against his or her spouse. See HRS § 707-700 (defining the term "sexual penetration"). Therefore, at the time relevant to Guity's Family Court Case and currently, a defendant could commit first-degree sexual assault and attempted first-degree sexual assault against his or her spouse.

However, at the time relevant to Guity's Family Court Case, the amended charge of third-degree sexual assault in violation of HRS § 707-732(1)(f), to which Guity pleaded guilty, could not be committed by a defendant against his or her spouse. HRS § 707-732(1)(f) provided that "(1) A person commits the offense of sexual assault in the third degree if: . . . (f) The person knowingly, by strong compulsion, has <u>sexual contact</u> with another person or causes another person to have sexual contact with the actor." (Emphasis added.) The term "sexual contact," in turn, was statutorily defined to mean, in relevant part: "any touching, other than acts of 'sexual penetration', of the sexual or other intimate parts of a <u>person not married to the actor</u>, or of the sexual or other intimate parts of the actor by the person . . . ." HRS § 707-700 (2014) (emphasis added.) Accordingly, at the time relevant to Guity's Family Court Case, the Legislature had defined the offense to which Guity pleaded guilty to

specifically exclude sexual contact by strong compulsion committed by a defendant against his or her spouse.

B.

HRPP Rule 11 establishes the procedures applicable to guilty pleas. HRPP Rule 11(g) provides: **"Determining accuracy of plea.** Notwithstanding the acceptance of a plea of guilty, the court shall not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." Under HRPP Rule 11(g),

> the court is prohibited from entering judgment upon a guilty plea if it is not subjectively satisfied that there is a factual basis for the plea. The court must satisfy itself that the conduct which the defendant admits constitutes the offense charged in the indictment, complaint, or information or an offense included therein to which the defendant has pleaded guilty. While the factual basis may come from various sources, it must appear on the record.

State v. Merino, 81 Hawaiʻi 198, 217, 915 P.2d 672, 691 (1996) (emphasis and brackets omitted) (quoting State v. Teves, 4 Haw. App. 566, 569, 670 P.2d 834, 837 (1983)).[1]

Here, the Circuit Court clearly violated HRPP Rule 11(g) in entering judgment on Guity's plea of guilty to third-degree sexual assault of his wife. Not only did the Circuit Court and the parties know that there was no factual basis for Guity's guilty plea to third-degree sexual assault, but they affirmatively knew that it was legally impossible for Guity to have committed this offense. Count 4 of the indictment in the Family Court Case identified Guity's wife as the alleged victim; in his Guilty Plea form, Guity stated that the factual basis for his plea to the amended charge of third-degree sexual assault in Count 4 was that "at our home in Mililani, I used physical force to have sexual contact with my wife's genital area"; and at the change of plea hearing, the Circuit Court advised Guity that he

---

[1] In Merino, the supreme court discussed HRPP Rule 11(f), which has not changed since Merino but was renumbered as HRPP Rule 11(g) in 2014. Rule 11(g) was patterned after Federal Rules of Criminal Procedure Rule 11(b)(3), which similarly provides: **"Determining the Factual Basis for a Plea.** Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."

was pleading guilty to third-degree sexual assault which the Legislature defined to "exclude sexual contact . . . with someone you're married to." Although HRPP Rule 11(g) does not prohibit a court from accepting, but only entering judgment on, a guilty plea for which there is no factual basis, where, as in this case, the Circuit Court definitively knew that it was legally impossible for Guity to have committed third-degree sexual assault of his wife, it should not have accepted his guilty plea to this offense.

With respect to the State's contention that Guity waived his right to challenge the substantive defect in his guilty plea to third-degree sexual assault of his wife, we conclude that a court's acceptance of, and entry of judgment on, a guilty plea to an offense that it knows the defendant could not legally commit implicates the integrity of the judicial system. We conclude that allowing such action by a court would be contrary to the truth-seeking function of the criminal justice system and would serve to undermine the integrity of the system and public confidence in the system. The plain language of HRPP Rule 11(g) prohibits a court from entering judgment upon a guilty plea without satisfying itself that there is a factual basis for the plea. HRPP Rule 11(g) does not contain an exemption for guilty pleas entered pursuant to the agreement of the parties. Under the circumstances of this case, where the factual basis for Guity's guilty plea was not only lacking, but affirmatively showed that it was legally impossible for Guity to commit the offense to which he pleaded guilty, we hold that Guity's challenge to his guilty plea could not be barred by waiver.[9]

---

[9] We note that some courts from other jurisdictions would permit a defendant, pursuant to a plea agreement, to plead guilty to a hypothetical offense or an amended charge for which there is no factual basis. See People v. Foster, 225 N.E.2d 200 (N.Y. 1967); State v. Zhao, 137 P.3d 835 (Wash. 2006). A California Court of Appeals, under circumstances somewhat analogous to this case, applied the doctrine of estoppel to prevent a defendant from avoiding a portion of her plea agreement. People v. Ellis, 240 Cal. Rptr. 708 (Cal. Ct. App. 1987). However, in light of the plain language of HRPP Rule 11(g) and the importance of maintaining the integrity of and public confidence in the criminal justice system, we decline to follow the approach taken by these courts in deciding this case.

C.

For the foregoing reasons, we conclude that the Circuit Court erred in accepting and entering judgment on Guity's guilty plea to third-degree sexual assault of his wife. Guity's plea of guilty to third-degree sexual assault cannot stand, and we vacate his conviction for this offense.

II.

Our conclusion that Guity's guilty plea to third-degree sexual assault of his wife cannot stand does not mean that Guity is entitled to withdraw from his guilty plea to second-degree sexual assault of CA. The Circuit Court rejected Guity's motion to withdraw his guilty plea to second-degree sexual assault. However, the Circuit Court's decision was based on evidence and arguments presented at a hearing at which Guity appeared pro se, with the assistance of stand-by counsel. We therefore must first determine whether Guity validly waived his right to counsel before appearing pro se at the hearing on his oral motion to withdraw his guilty pleas.

A.

Guity contends that the Circuit Court erred in allowing him to proceed pro se with standby counsel without first obtaining his valid waiver of his right to counsel. We agree.

The Hawai'i Supreme Court has held that

[w]hen a defendant elects to proceed pro se, the record must indicate that the defendant was offered counsel, but he or she "voluntarily, knowingly, and intelligently rejected the offer and waived that right." The trial court must ensure two requirements are met: first, the waiver of counsel is "knowingly and intelligently" made, and second, "the record is complete so as to reflect that waiver."

State v. Phua, 135 Hawai'i 504, 512, 353 P.3d 1046, 1054 (2015) (citations and footnote omitted).

We conclude that the record does not reflect a valid waiver of counsel. Instead, our review of the record reveals that the Circuit Court's discussion with Guity regarding his waiver of the right to counsel was disjointed, took place at

15

different hearings, was intermingled with discussion of other issues, and did not result in Guity's valid waiver of his right to counsel.

B.

Several months after the Circuit Court granted Minn's motion to withdraw as counsel and referred Guity to the Public Defender's Office, Guity wrote a letter to the Circuit Court. In this letter, Guity informed the Circuit Court that he wanted to withdraw his guilty pleas and proceed to trial and that he wanted to represent himself because the Public Defender's Office was not providing him with assistance. At a hearing held by the Circuit Court on Guity's requests, at which Guity appeared with Nagamine, the Circuit Court stated that it wanted Guity to file a written motion on the representation issue. The Circuit Court discussed certain disadvantages Guity would face if he represented himself, but deferred any ruling on the representation issue.

Nagamine subsequently filed a motion seeking to withdraw as Guity's counsel, which requested that Guity be appointed new counsel. The motion did not request that Guity be allowed to proceed pro se. The Circuit Court held a hearing on this motion, which took place about a month after the prior hearing. At the hearing on the motion filed by Nagamine, Guity informed the Circuit Court that because he remained in custody, his main concern was avoiding delay in having his cases proceed to trial. He was upset with Nagamine and the Public Defender's Office because for three months after Minn withdrew and his case was assigned to the Public Defender's Office, no one from the office had come to see him. Nagamine stated that he had informed Guity that because of Nagamine's case load, Nagamine would not be able to proceed to trial in Guity's cases for another six months, which also upset Guity and prompted Nagamine to file the motion to withdraw as counsel.

The Circuit Court, however, informed Nagamine that Guity had pleaded guilty and therefore Nagamine would only need to prepare for trial if Guity was permitted to withdraw his

16

guilty pleas. Nagamine apparently had not distinguished between the time he would need to prepare for trial and the time needed to prepare for a motion to withdraw guilty pleas, because when the Circuit Court stated that Guity had pleaded guilty in both cases, Nagamine responded, "I'm sorry, I'm sorry. I'm assuming that we're going to reset. Yeah, my bad." The record does not show that Guity understood that he could be represented by counsel at his motion to withdraw his guilty pleas and then, if his motion was granted, elect to proceed pro se to avoid a delay in the scheduling of trial. At the hearing, Guity asked the Circuit Court to appoint him counsel other than Nagamine, which further complicated the discussion.

In the end, without a meaningful discussion at that hearing of the risks and disadvantages of self-representation, the Circuit Court asked Guity whether he wanted to represent himself, have Nagamine represent him, or have Nagamine act as stand-by counsel. Guity responded that he would "go pro se" with Nagamine as stand-by counsel. However, almost immediately after informing the Circuit Court that he would proceed pro se with Nagamine as stand-by counsel, Guity told the Circuit Court, "I need a lawyer, Your Honor." In response, the Circuit Court accused Guity of "play[ing] games." The Circuit Court then confusingly told Guity that "I am denying your motion." Since the motion for which the hearing was held was the motion filed by Nagamine to withdraw as Guity's counsel and requesting the appointment of new counsel, the Circuit Court's statement that it was "denying your motion" suggests that it was not permitting Nagamine to withdraw as Guity's counsel of record. Nevertheless, three days later, when the parties appeared for a hearing on Guity's oral motion to withdraw his guilty pleas, the Circuit Court, without further discussion, permitted Guity to appear pro se with Nagamine as stand-by counsel. Under these circumstances, we cannot conclude that the record reflects a valid waiver by Guity of his right to counsel. See Phua, 135 Hawai'i at 512, 353 P.3d at 1054.

17

III.

After considering Minn's testimony and the other evidence presented at the hearing on Guity's oral motion to withdraw his guilty pleas, the Circuit Court denied Guity's motion. Guity contends that the Circuit Court erred in denying his oral motion to withdraw his guilty pleas because his guilty pleas were invalid due to Minn's ineffective assistance.

Among other things, Guity contends that Minn provided ineffective assistance by having him plead guilty to third-degree sexual assault of his wife because it was a crime Guity could not legally commit. Although we have concluded that the Circuit Court committed error under HRPP Rule 11(g) in accepting and entering judgment on Guity's guilty plea to third-degree sexual assault of his wife, that does not mean that Minn provided ineffective assistance in having Guity plead guilty to third-degree sexual assault. There was a tactical basis for Guity to plead guilty to third-degree assault of his wife as part of his plea agreement. By doing so, Guity obtained the State's dismissal of two class A felonies, each carrying a possible twenty-year term of imprisonment, and two class B felonies, each carrying a possible ten-year term of imprisonment; reduced a class A felony to a class C felony; avoided possible extended terms of imprisonment; and limited his sentence to an agreed-upon total term of imprisonment of eighteen months. The record of Guity's change of plea hearing indicates that he knew he was pleading guilty to an offense he could not legally commit. Based on the existing record, we cannot conclude that Minn provided ineffective assistance in having Guity plead guilty to third-degree sexual assault of his wife.

The Circuit Court rejected Guity's other claims that Minn's alleged ineffective assistance provided a fair and just reason to permit Guity to withdraw his guilty pleas. However, the Circuit Court's rulings were based on a hearing at which Guity appeared pro se without having validly waived his right to counsel. Because Guity did not validly waive his right to

18

counsel prior to the hearing, the results of the hearing were tainted and the Circuit Court's rulings cannot stand.

CONCLUSION

Based on the foregoing, we vacate the Judgment in the Circuit Court Case and the Amended Judgment in the Family Court Case. Pursuant to HRPP Rule 11(g), Guity's plea of guilty to third-degree sexual assault of his wife cannot stand, and Guity must be permitted to withdraw his guilty plea to this offense. However, because the State did not breach the plea agreement, it retains the option of (1) foregoing prosecution on this count (Count 4 in the Family Court Case) and the other counts dismissed and seeking to enforce the remainder of the plea agreement or (2) withdrawing from the plea agreement and pursuing prosecution on all the original charges in both cases. If the State selects the first option, Guity shall be entitled to a new hearing on his motion to withdraw his guilty plea to second-degree sexual assault of CA, with further proceedings dependant on the outcome of that motion. If the State selects the second option, the original charges in both cases shall be set for trial, and no new hearing on Guity's motion to withdraw his guilty plea to second-degree sexual assault will be necessary. The Circuit Court Case and the Family Court Case are remanded for further proceedings consistent with this Memorandum Opinion.

DATED: Honolulu, Hawai'i, October 31, 2016.

On the briefs:

Brian A. Costa
(Costa & DeLacy, LLLC)
for Defendant-Appellant

Stephen K. Tsushima
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

*Craig H. Nakamura*
Chief Judge

*(signature)*
Associate Judge

*(signature)*
Associate Judge

19